# EXHIBIT C

**LICENSE AND COLLABORATION AGREEMENT**

This License and Collaboration Agreement ("Agreement"), with an effective date of January 1, 2025 ("Effective Date"), is between Fish Kiss, Inc., a corporation organized and existing under the laws of the State of Colorado, with a principal place of business located at 1202 Fletcher Drive, Erie, Colorado 80516 (hereinafter "Licensor"), and Swedish Treasures, LLC d/b/a Wet-It!, a limited liability company organized and existing under the laws of the State of North Carolina with a principal place of business located at 701 Withrow Road, Forest City, NC 28043 (hereinafter "Licensee"). The parties are referred to individually as a "Party" and collectively as the "Parties".

**RECITALS**

**WHEREAS**, Licensor is the creator and owner of certain artwork depicting unique state maps, all of which are registered with the U.S. Copyright Office;

**WHEREAS**, Licensee is experienced in the manufacture, promotion, marketing, sale and distribution of certain home and kitchen products;

**WHEREAS**, Licensor desires to outsource the manufacture, promotion, marketing and distribution of its product line bearing Fish Kiss' artwork;

**WHEREAS**, Licensee desires to obtain the right to use certain of Licensor's state map artwork designs (identified in **Exhibit A**) (hereinafter the "Licensed Artwork") solely in connection with the commercial manufacture, promotion, and distribution of Licensee's products (identified in **Exhibit B**) (hereinafter the "Licensed Products");

**WHEREAS**, Licensor is willing to grant to Licensee a license solely for this purpose under the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises, covenants, and conditions contained herein, it is agreed as follows:

**I. LICENSE**

A. Licensor hereby grants to Licensee, during the term of this Agreement, the exclusive use of the Licensed Artwork identified in *Exhibit A* solely on or in connection with the manufacture, sale, promotion, and distribution of the specific products identified in *Exhibit B* (such products hereinafter referred to as "Licensed Products").

B. Licensor further grants to Licensee, during the term of this Agreement, the use of the Licensed Artwork on a non-exclusive basis solely on or in connection with the manufacture, sale, promotion and distribution of art prints, posters and canvases, baby clothing and accessories, pillows, and mini multi-use towels.





Doc ID: 23994ae751b3abcade83da440310409cffe537cb

C. Such Agreement grants a non-transferable, non-assignable, revocable license. Licensor hereby reserves all rights not expressly granted to Licensee under this Agreement. Licensee may not grant sublicenses of any of its rights under this Agreement.

D. The territory for the license under this Agreement shall be worldwide ("Territory").

E. Notwithstanding the exclusive license granted to Licensee in Paragraph I.A., Licensee acknowledges that Licensor has previously granted licenses to third-party vendors and that Licensor is continuing to pursue product development with third-party vendors, which may include development of products subject to the exclusivity limitations set forth in this Paragraph (specifically, tea towels, glass drinkware, ceramic mugs, and plastic platters). To facilitate the foregoing, Licensee acknowledges Licensor's reservation of rights to authorize vendors to conduct pre-production activities—such as design, conceptualization, product development, gauging product interest, and marketing preparation. Accordingly, the exclusivity provisions in Paragraph I.A. shall not restrict Licensor's right to grant third-party vendors a limited license for such pre-production purposes.

**II. THE PARTIES' OBLIGATIONS**

A. <u>Licensee's Obligations</u>

1. The Parties acknowledge and agree that Licensor shall delegate, and Licensee shall assume, the general production, sales and day-to-day operations of Fish Kiss, Inc. Specifically, Licensee will:

(i) Manage the sourcing and creation of Licensed Products by maintaining the relationships with Licensor's current vendors;

(ii) Arrange for and oversee all aspects of the manufacturing and production of the Licensed Products;

(iii) Manage all aspects of importation, shipment, distribution and order fulfillment of Licensed Products;

(iv) Manage all aspects of the sales of Licensed Products, including without limitation, sales processing, payment processing, issuance of refunds, accounting and bookkeeping;

(v) Manage fulfillment of all orders for the Licensed Products, including order processing, order packaging, product shipment and delivery, and inventory management;

(vi) Manage all software systems or programs utilized by Licensor in connection with products bearing the Licensed Artwork and/or the Licensed Products, including, accounting software, order platforms, Faire, Etsy, Shopify, Dropbox, Order Desk and



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

Customily (“Licensor Software”), including the operation and utilization of the Licensed Software;

(vii) Maintain appropriate licenses and subscriptions for use of the Licensed Software to manage and operate the Fish Kiss business, including payment of subscription or access fees, maintaining necessary software licenses, providing Licensor with any updated passwords or access codes, and communicating any material changes or updates to the Licensed Software to Licensor;

(viii) Create and publish marketing and advertising materials for the promotion of the Licensed Products;

(ix) Manage Licensor’s customer base, including both retail and wholesale customers;

(x) Actively market and promote the Licensed Products for maximum exposure and sales;

(xi) Manage and operate the Fish Kiss website (the “Website”) through:

1. fulfillment of orders originating from the Website;
2. development of new substantive content and marketing materials for the Website;
3. handling communications and product interest originating from the Website, and forwarding any licensing inquiries to Licensor;
4. management of wholesale inquiries; and
5. generally overseeing and running the Website.

(xii) Keep Licensor fully apprised of the general status and well-being of the Fish Kiss business, of material communications between Wet-it and Fish Kiss manufacturers, producers, vendors and/or customers; and

(xiii) Keep Licensor fully and timely apprised of any issues that arise with the operation and management of the Fish Kiss business.

B. Licensor’s Obligations

1. Licensor shall provide Licensee with appropriately formatted high-resolution files and images of the Licensed Artwork. Licensor will cooperate with Licensee at no cost to modify or resize the Licensed Artwork for application on the physical products, except as provided in Paragraph VI.B. regarding material changes to the Licensed Artwork.

2. Licensor shall provide Licensee with the contact information for Licensor’s manufacturer and vendor contacts and customer lists solely for the purpose of Licensee’s operation of

the Fish Kiss business. Licensee acknowledges that Licensor's manufacturing and vendor contacts and customer lists ("Licensor's Data") is proprietary to Licensor, extremely valuable and comprises confidential information, the disclosure of which would cause irreparable damage to Licensor and the Fish Kiss business. In addition to any other right or remedy it may have at law or equity, Licensor shall be entitled to seek and obtain injunctive relief without the posting of any bond or other security in order to prevent Licensee's use, dissemination or publication of Licensor's Data. Any costs incurred by Licensor in effecting such forfeiture or in obtaining injunctive relief shall be borne by Licensee, including all reasonable attorneys' fees and costs.

3. The Parties shall communicate with each other to ensure access to the Licensor Software, to address any non-technical issues with the Licensed Software, and to determine whether any of the Licensed Software is redundant or unnecessary vis-à-vis Licensee's operations and software systems. Payments processed through the Licensor Software shall be deposited into Licensee's bank accounts, and Licensor shall take all reasonable actions necessary to effect this payment transition. Licensee shall bear all costs of maintaining the appropriate licenses for the Licensor Software and obtaining the appropriate training for any of the Licensor Software.

4. Licensor shall be generally available for consultation with Licensee regarding any aspects of the Fish Kiss business, product line and brand.

C. Collaboration and Cooperation. The Parties shall collaborate on all aspects of the Fish Kiss brand to develop high quality, saleable Licensed Products that represent the quality and reputation of the current Fish Kiss brand and product line. The Parties shall consult regularly with each other regarding projected, actual and target product sales and revenue, product performance and elements thereof, the effectiveness of relevant marketing and advertising campaigns, including on the Website and the Social Media, and the identification of any actions required for the future success of the Fish Kiss brand and the Licensed Products.

**III. QUALITY**

A. The quality and style of the Licensed Products shall be at least as high as the best quality of similar products currently sold or distributed by Licensee in the Territory and shall adhere to industry standards. Licensee shall follow proper procedures for testing that the Licensed Products comply with all applicable laws, regulations and standards.

B. Before production of the Licensed Products, Licensee shall submit, at its cost, for Licensor's approval, two of each type of Licensed Products to be produced, including any intended labels, containers, packing and wrapping materials and exemplars of advertising or promotional copy (the foregoing collectively referred to as "Samples") for the Licensed Products intended to be manufactured and distributed. Licensee shall also submit, at its cost, for Licensor's approval, digital mockups of the final artwork on Licensed Products ("Mockups") to be produced. The Samples shall be sent to Licensor at: Anne Klein, Fish Kiss, Inc., 1202 Fletcher Drive, Erie,



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

Colorado 80516. The Mockups may be sent via email to anne@fish-kiss.com. No Licensed Products shall be offered for sale or distributed until the Samples and Mockups have been approved in writing by Licensor, and failure of Licensee to obtain approval prior thereto may result in immediate termination of this Agreement, at Licensor's sole discretion and election. Written approval for Samples and Mockups may be made via email. All Licensed Products shall conform to the quality of the approved Samples and Mockups.

C. Samples and Mockups submitted by Licensee shall be deemed disapproved if Licensee has not received written approval from Licensor for the Samples or Mockups in question within ten (10) business days after Licensor's receipt of the Samples or Mockups. Licensor has no more than ten (10) days to submit its approval or disapproval of proposed Samples and Mockups. Nothing herein shall be deemed to obligate Licensor to respond to any such submission prior to the expiration of the ten (10) business day period provided hereunder. Licensor shall return approved Samples to Licensee at Licensee's request and at Licensee's expense. After Samples and Mockups have been approved, Licensee shall not depart therefrom in any material respect without Licensor's prior written consent.

D. Licensor may, from time to time, request individual Samples of the Licensed Products and their related materials as herein before described, being manufactured and sold by Licensee hereunder, to ensure that the quality of the Licensed Products conforms to the Samples approved. Such Samples will be provided at Licensee's cost and expense. In the event that the Licensed Products do not meet the quality of the approved Samples, Licensor shall notify Licensee in writing, and Licensee shall have thirty (30) days to restore the Licensed Products to the quality of the approved Samples, but Licensee shall not have the right to continue selling the substandard Licensed Products.

E. Licensee agrees to include the following copyright notice on the Licensed Products (as a back stamp or in a reasonably feasible, visible location) and to use the following copyright and trademark notices on packaging and inserts:

**Copyright: © 20____. Fish Kiss, Inc. All rights reserved.**
**Trademark: *Fish Kiss*® is a federally registered trademark owned by Fish Kiss, Inc.**

F. Licensee shall carry out all activities hereunder in compliance with all applicable laws, governmental regulations, rules, ordinances, and other requirements of federal, state, and local authorities. Licensee shall follow proper procedures for testing to ensure that the Licensed Products comply with all applicable safety laws, regulations and standards, and with applicable state, federal and international laws. In the event that the Licensed Products are not in compliance with all applicable laws, such Licensed Products shall automatically be deemed disapproved by Licensor and shall not be shipped unless and until such Licensed Products have been brought into compliance with such laws. Should Licensee fail to bring the Licensed Products into compliance with all applicable local and international laws or regulations within thirty (30) days of notice or discovery of non-compliance, such failure shall



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

be a material breach of the Agreement, and Licensor may, in its sole discretion, immediately terminate this Agreement and revoke the license granted herein.

## IV. TERM

The initial term of this Agreement ("Term") shall commence upon the Effective Date and shall, unless earlier terminated in accordance with Section IV hereof, expire on January 1, 2026 ("Expiration Date").

## V. TERMINATION

A. This Agreement shall terminate upon the earliest of the following dates or occurrences:

1. The Expiration Date as contemplated by Paragraph IV;

2. Licensee becomes insolvent or files for bankruptcy;

3. Licensee fails to accurately account for sales and royalties due as specified in this Agreement;

4. Licensee fails to make royalty payments within the time prescribed by this Agreement;

5. Licensee fails to maintain quality of the Licensed Products according to the approved Samples after notification from Licensor; or
6. Licensee otherwise breaches this Agreement and fails to cure such breach after written notice of such breach by other party within thirty (30) days of such written notice.

B. Within ten (10) days after termination of this Agreement, Licensee shall provide Licensor with a list of its inventory of all Licensed Products on hand and in process. Within ten (10) days of the expiration or termination of this Agreement, Licensee shall provide Licensor with a written accounting of all remaining inventory of the Licensed Products.

C. Upon termination of this Agreement, Licensee grants to Licensor the right to purchase the remaining inventory of Licensed Products at the lowest wholesale price. Except as provided in this Paragraph, upon the termination of this Agreement, Licensee shall refrain from any further use of the Licensed Artwork.

D. Licensee shall provide Licensor with written instructions as to whether the remaining inventory of the Licensed Products shall be purchased by Licensor, destroyed, or donated to an appropriate charitable organization, to be approved in writing by Licensor.

## VI. TRANSPARENCIES AND CREATIVE APPROVAL PROCESS

A. Licensor shall provide to Licensee appropriate electronically formatted images of the Licensed Artwork so that Licensee may create the Licensed Products. Licensee agrees that it shall bear any costs or expenses associated with modification of the Licensed Artwork (for sizing and aesthetic purposes), but Licensee acknowledges that it has not been granted the right to make



Doc ID: 23994ae751b3abcade83da44031040 9cffe537cb

derivative works from the Licensed Artwork. Licensee further agrees that it shall bear all costs related to manufacture, shipment, marketing and distribution of the Licensed Products.

B. Licensor and Licensee agree to devote their best talents, efforts, abilities and adequate resources to the finalization of the Licensed Artwork for its application to the Licensed Products, and to the performance of the other duties and services set forth hereunder, and the Parties agree to communicate and cooperate with each other during the Term of this Agreement. Notwithstanding the foregoing, should Licensee require Licensor to materially revise or modify the original Licensed Artwork for placement and inclusion on Licensed Products, Licensor shall be entitled to compensation, in addition to royalty payments, in an amount mutually agreed upon by the Parties prior to Licensor's engagement therefor. Any derivative works resulting from Licensor's changes to the Licensed Artwork, material or otherwise, are owned exclusively by Licensor.

**VII. INSURANCE**

Licensee shall, at its own expense, carry and maintain during the term of this Agreement and until Licensee ceases selling the Licensed Products, commercial general liability insurance policy with combined single limits of not less than $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate. Licensor shall be named as additional insured on Licensee's insurance policy. Licensee shall provide Licensor with a copy of its insurance policy naming Licensor as an insured. Licensee's failure to provide insurance coverage under this Paragraph shall be a material breach of this Agreement.

**VIII. ROYALTIES**

A. Licensee shall pay Licensor, for and in consideration of the rights and license granted herein, a royalty of: (a) eight percent (8%) of Net Sales of Wet-it! sponge cloth products, and (b) seven percent (7%) of Net Sales of all other Licensed Products. The term "Net Sales" for purposes of determining the royalty shall mean Licensed Products sold at Licensee's regular sales price, as adjusted to reflect customary trade discounts, returns, cancellations, credits/rebates and allowances. In calculating net sales, no deductions shall be made for shipping costs, commissions, taxes, or for delinquent, uncollected or uncorrectable amounts for taxes, fees, etc.

B. Royalties shall be paid monthly, within thirty (30) days of the last day of the previous month. A certified accounting shall accompany the payment and shall identify the dollar sales amount of each Licensed Product sold during the month.

C. Accounting statements, royalty checks and all other payments due under this Agreement shall reflect payment in United States currency. Licensee shall provide price lists for the Licensed Products upon Licensor's request, and such information will be treated confidentially by Licensor.

D. Royalty payments made more than ten (10) days after the due date shall be considered delinquent and will incur a late fee of 1.5% of the balance due per day for each day that payment is not timely made, calculable from the due date. Should Licensee fail to make accurate royalty payments and to compensate Licensor therefor, all costs of collecting past due royalty payments shall be borne by Licensee. Costs shall include all reasonable attorneys' fees incurred by Licensor in collecting past-due amounts and/or otherwise enforcing the royalty payment terms of this Agreement.

## IX. BOOKS, RECORDS AND ACCOUNTING STATEMENTS

A. Licensee agrees to keep accurate books of accounts and records concerning all transactions hereunder, with copies thereof. Licensor shall have the right, during ordinary business hours, to examine, audit and take excerpts from such books of accounts and records, either itself or through a firm of independent accountants. Such right to examine is extended to Licensor, at its expense, unless an error of five percent (5%) or more for any given fiscal quarter is located, in which case Licensee shall bear the costs of the inspection, and any future inspections, by a certified public accountant, to be approved by Licensor. Such accounts and records shall be preserved and maintained by Licensee for at least three (3) years from the end of each accounting period, and Licensee agrees to permit inspection thereof by Licensor or independent accountants during said period upon reasonable notice.

B. Each payment of royalties to Licensor shall be accompanied by a written accounting statement detailing the computation of royalties then due and payable to Licensor. Such written statement shall be in reasonably specific detail and be certified as true and accurate by Licensee. Each such statement shall show the item number and description, gross invoice amount billed, any deductible discounts, allowances and returns, and the reportable sales for each Licensed Products. Receipt or acceptance by Licensor of any statement furnished hereunder shall not preclude Licensor from challenging the accuracy thereof at any time. Upon discovery of accounting mistakes or inaccuracies in any statement, Licensee shall notify Licensor of the mistake or inaccuracy and shall promptly compensate Licensor for all amounts due and owing, including any amounts due and owing under Paragraph VIII.D or IX.A as applicable.

## X. DISTRIBUTION AND MARKETING

A. Licensee agrees that during the term of this Agreement it will use its best efforts to manufacture, promote, market and distribute the Licensed Products. Licensee agrees that it will allocate sufficient resources for the purpose of marketing the Licensed Products.

B. Licensee shall process and fulfill orders for the Licensed Products in a timely fashion and in the same manner as that used for similar products sold or distributed by Licensee in the Territory and in accordance with industry standards and all applicable laws and regulations.



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

C. Licensee shall not have the right to sell the Licensed Products to off-price retailers, value retailers, discount retailers, or job lot retailers without Licensor's prior written approval. Licensee shall not discount the price of the Licensed Products by more than thirty percent (30%) of regular retail price without Licensor's prior written authorization.

D. Licensee shall use its best efforts to maintain, nurture and grow vendor and customer relationships. Licensee shall timely fulfill and process product orders, promptly address any customer complaints, promptly act to resolve any vendor or sourcing issues, and advise Licensor of any material issues that may arise that would impact Fish Kiss' reputation, business, revenue and/or goodwill, and/or any issues that Licensee is unable to resolve without Licensor's assistance.

E. Licensee shall make no misrepresentations or deceitful statements in connection with the marketing of the Licensed Products, including making inaccurate sourcing representations, such as "Made in the USA." All statements and representations made by Licensee will be accurate and, upon receiving notice of the inaccuracy of any representation, Licensee shall withdraw the inaccurate statement within five (5) days of such notice.

F. Licensee may request that Licensor participate in marketing and promoting the Licensed Products by attendance at events such as trade shows, fairs, public appearances, or other promotional engagements. Licensor may, in its sole discretion, agree to attend such events and expressly reserves the right to decline to attend events. Should Licensor agree to attend any events, Licensee agrees to reimburse Licensor for all of Licensor's reasonable travel and accommodation costs incurred. Licensor shall submit to Licensee an invoice and/or receipts for reimbursement of travel costs, and Licensee shall remit payment to Licensor within no more than thirty (30) days of receipt thereof.

**XI. COPYRIGHT**

A. All copyrights in and to the Licensed Artwork are owned by Licensor. All Licensed Products sold or distributed shall be individually marked with all appropriate copyright and trademark notices, as set forth in Paragraph III.E. Licensee shall not in any manner represent that it has any interest in and to the Licensed Artwork or Licensor's trademarks except as a licensee of the Licensed Artwork.

B. Upon the termination of this Agreement, Licensee shall immediately destroy all digital images, sketches and/or derivative works of, and production materials for, the Licensed Artwork and shall forfeit all rights to use the Licensed Artwork, as well as the right to manufacture, distribute, sell or otherwise dispose of the Licensed Products, except as provided in Paragraph V.B. for the Sell-Off Period. Failure of Licensee to comply with any of its obligations under this Paragraph along with a failure to cure such breach within ten (10) business days of notice thereof shall result in immediate forfeiture of its rights to market and distribute the Licensed Products, to use the Licensed Artwork or any derivative thereof, as well as to any Sell-Off Period. Licensee acknowledges that a breach of this Paragraph XI.B. shall cause irreparable injury to Licensor,

and that such injury may not be adequately compensated by damages. Accordingly, Licensor shall be entitled, in addition to any other right or remedy it may have at law or equity, to seek and obtain injunctive relief without the posting of any bond or other security to in order to compel Licensee's surrender of the Licensed Artwork and the Licensed Products to Licensor. Any costs incurred by Licensor in effecting such forfeiture or in obtaining injunctive relief shall be borne by Licensee, including all reasonable attorneys' fees and costs.

C. Licensee recognizes Licensor's ownership of the Licensed Artwork and will not at any time do or suffer to be done any act or thing which will in any way impair the rights of Licensor in and to the Licensed Artwork. Only Licensor has the right to proceed against infringers of its copyrights and Licensee shall fully cooperate with Licensor in any action or matter. Licensee shall promptly notify Licensor of any actual or alleged infringement of the Licensed Artwork by any third party of which Licensee is or becomes aware. Licensor will have the right, but not the obligation, to institute such suit at its own expense in the name of "Licensor" or "Licensee" or "Licensor and Licensee" and to retain the proceeds of any recovery, judgment, award or settlement attained therein.

D. Licensee may not modify, change or create derivative works from the Licensed Artwork in any manner except to modify size, color, placement or other commercially required, non-material modifications.

**XII. TRADEMARK**

A. Licensor grants to Licensee the limited, restricted right to use Licensor's trademark FISH KISS solely in connection with the advertisement, promotion, sale and distribution of the Licensed Products (the "FISH KISS Mark").

B. All Licensed Products offered for sale must bear the FISH KISS Mark pursuant to Paragraph III.E. Licensee shall include proper trademark notices on all Licensed Products and ensure that all of its use of the FISH KISS Mark is accompanied by or marked with the appropriate proprietary rights notices, symbols, and logos as may be reasonably necessary under applicable law to maintain Licensor's proprietary trademark rights. Licensee agrees that it shall strictly adhere to Licensor's instructions relating to the use of Licensor's trademark. Should Licensee fail to (a) use the FISH KISS Mark pursuant to Licensor's instructions, or (b) maintain the quality of the Licensed Products as contemplated by Paragraph III, Licensor may terminate the Agreement immediately upon written notice, and Licensee will be obliged to forthwith cease use of the Licensed Artwork and sales of the Licensed Products.

C. Licensee does not have the right to grant sublicenses of Licensor's trademarks. Any attempt to grant a sublicense will be null and void and shall be considered to constitute willful infringement of Licensor's trademark rights.

D. As between the Parties, Licensor owns any improvement, enhancement, or other modification to the FISH KISS Mark made by or on behalf of Licensee or Licensor. Licensee shall immediately



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

notify Licensor of any such modification made by or on behalf of Licensee. Licensee hereby assigns to Licensor all of its right, title, and interest in and to all utilized iterations of the FISH KISS Mark, including all rights to apply for any trademark registrations and all enforcement rights and remedies for past, present, and future infringement thereof and all rights to collect royalties and damages therefor.

E. Licensor may exercise quality control over all uses of the FISH KISS Mark under this Agreement to maintain the validity of the FISH KISS Mark and protect the goodwill associated therewith. For the purpose of monitoring Licensee's compliance with Licensor's quality standards, Licensor or its agent may inspect Licensee's facilities, on reasonable notice and during normal business hours; and Licensee shall submit to Licensor representative samples of any product bearing the FISH KISS Mark for Licensor's review and approval pursuant to Paragraph III. Licensee acknowledges and agrees that, based on the special relationship of trust between the Parties, Licensor may reasonably rely on Licensee's compliance with Licensor's quality standards.

F. Only Licensor has the right to proceed against infringers of its trademarks and Licensee shall fully cooperate with Licensor in any action or matter. Licensee shall promptly notify Licensor of any actual or alleged trademark infringement by any third party of which Licensee is or becomes aware. Only Licensor may institute a trademark infringement suit at its own expense in the name of "Licensor" or "Licensee" or "Licensor and Licensee" and to retain the proceeds of any recovery, judgment, award or settlement attained therein.

**XIII. INDEMNITY**

A. Licensee shall defend, indemnify, and hold harmless Licensor and its officers, employees, and agents against any and all claims, causes of action and judgments, cost or expenses arising from (i) a breach by Licensee of any of its obligations, representations, warranties, or agreements contained herein; and/or (ii) the production, distribution, promotion and exploitation of the Licensed Products, including but not limited to, manufacturing or design defects of the Licensed Products, and any product liability claims related thereto.

B. Licensee shall further defend, indemnify, and hold harmless Licensor and its officers, employees, and agents against any and all claims, causes of action and judgments, cost or expenses arising from any claims of trademark or copyright infringement as relates to the use of any content not provided by Licensor and utilized by Licensee in advertising or marketing of the Licensed Products, including on the Website or the Social Media.

C. Licensor states, to the best of its knowledge, that:
   1. Licensor has the authority to enter into this Agreement;
   2. Licensor has not previously assigned or otherwise transferred the rights granted by this Agreement to another party;
   3. the Licensed Artwork does not violate any existing copyrights; and
   4. the FISH KISS Mark does not violate any existing trademarks.



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

D. Licensor shall defend, indemnify, and hold harmless Licensee and its officers, employees, and agents against any and all claims, causes of action and judgments, cost or expenses arising from any claims of trademark or copyright infringement as relates to the Licensed Artwork and/or the FISH KISS Mark.

**XIV. WARRANTIES**

A. Licensee warrants and represents that:
   1. all elements of the Licensed Products will be of good quality in design, material and workmanship, and will be suitable for the intended purpose;
   2. no injurious, deleterious or toxic substances will be used in or on the Licensed Products;
   3. the Licensed Products will not cause harm when used as intended and with ordinary care for its intended purpose; and
   4. the Licensed Products will be manufactured in strict compliance with all applicable laws and regulations, including local and national consumer safety laws.

**XV. CONFIDENTIALITY**

A. Licensor and Licensee agree to keep the terms of this Agreement confidential. The Parties agree to utilize an appropriate confidentiality agreement with their employees and contractors involved in sourcing, producing, marketing or distributing the Licensed Products.

B. Licensee acknowledges the valuable nature of Licensor's vendors and product manufacturers and accordingly shall not disclose information related to Licensor's vendors and product manufacturers to any third parties without first obtaining Licensor's written consent.

C. All information obtained in any manner by either Party to this Agreement expressly deemed by either Party to be confidential, proprietary or otherwise non-public in nature (hereinafter "Confidential Information") shall be kept strictly confidential and shall not be disclosed in any manner whatsoever, either in whole or in part, without prior written consent of the other Party during the term of this Agreement and for three (3) years following the termination of the Agreement, except in the case of trade secrets where such obligation lasts in perpetuity. Confidential Information may include, but is not limited to, financial information, intellectual property, marketing plans and strategies, product development, design and methods, sales force and administration, customer lists, customer bids, quotations, and vendor lists and contact information. In the event this Agreement is terminated, all Confidential Information retained by either Party shall be kept confidential and destroyed. This confidentiality provision shall not apply to information that (a) is already in the public domain through no fault of the recipient; (b) the recipient can demonstrate was already lawfully in its possession on the date of disclosure; (c) the recipient acquired from any third party without restrictions on disclosure; (d) is independently developed by the recipient or its affiliates as evidenced by written records; (e) must be disclosed by law or court order; provided, however, that in such case the recipient shall give the disclosing party notice of such required disclosure as soon as reasonably practicable so that the disclosing party may have an opportunity to contest such disclosure or obtain protective orders regarding such disclosure.



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

D. Should either Party be required to commence legal proceedings against the other Party to enforce the terms of this Agreement, this term shall be automatically waived by both Parties and no further privilege of confidentiality with respect to the nature and terms of this Agreement shall be available to either Party.

**XVI. NON-COMPETE**

A. Licensee acknowledges Licensor's valuable relationships with its customers, vendors and product manufacturers and understands Licensor's need to keep Licensor's Data confidential, because the disclosure of this information would cause irreparable damage to Licensor and the Fish Kiss business. Licensee shall not disclose Licensor's Data to any third parties and shall treat such information as confidential pursuant to Paragraph XV.

B. Licensee shall not utilize Licensor's vendors or product manufacturers to manufacture or produce any products sold by Licensee that are in competition with Licensor's products, namely, products bearing artwork of geographic locations or geographic maps.

**XVII. NOTICES**

All notices and payments to the Licensor shall be sent to the Licensor at the following address, and all notices to the Licensee shall be sent to the Licensee at the following address:

| If to Licensor: | If to Licensee: |
|---|---|
| Anne C. Klein | Swedish Treasures |
| 1202 Fletcher Drive | PO Box 926 |
| Erie, CO 80516 | Rutherforton, NC 28139 |
| Telephone: (303) 717-3703 | Telephone: 828-382-0074 |
| Email: anne@fish-kiss.com | Email: justin@wetcloths.com |

**XVIII. MISCELLANEOUS**

1. Successors and Assigns. All covenants, representations, warranties and agreements of the Parties contained herein shall be binding upon and inure to the benefit of the respective successors and permitted assigns.

2. No Joint Venture. The relationship between Parties created hereby is that of licensee and licensor, and not that of partners, joint venturers, principal and agent, employer and employee or any similar relationship, the existence of which the Parties hereby expressly deny. Licensor is not an employee of Licensee, and thus Licensor is responsible for paying all taxes for the received remunerations under this Agreement. Licensee, when performing its duties and obligations hereunder, shall, with respect to Licensor, be an independent entity.

3. Assignment. Neither Party to this Agreement may assign, by operation of law or otherwise, all or any portion of its rights, obligations, or liabilities under this Agreement without the prior

written consent of the other Party. Any attempted assignment in violation of this Paragraph shall be voidable and shall entitle the other Party to this Agreement to terminate this Agreement at their option.

4. No Waiver. Failure of either Party at any time to require the performance of any provision of this Agreement shall not affect the right of such Party to require full performance thereafter. A waiver by either Party of a breach of any provision of this Agreement shall not operate as a waiver of any further or similar breach or as nullifying the effectiveness of such provision.

5. Force Majeure. Notwithstanding anything to the contrary contained herein, the failure of either Party to perform its obligations under this Agreement shall not be deemed to be a violation of this Agreement or give rise to any right of termination or reversion if such failure arises from a "force majeure" event. In such case, the Parties' time to perform its obligations hereunder shall be extended for a period equal to the period of delay caused by the force majeure event. For purposes of this Agreement, a "force majeure" event includes, without limitation, acts of God, fires, national disasters, acts of war or terrorism, restrictions of governmental agencies, labor disputes or inability to obtain the materials necessary for production, or any other circumstances beyond the Parties' reasonable control.

6. Survival. Paragraphs III, V, VII, VIII, IX, XI, XII, XIII, XIV,XV, XVI and XVII shall survive the expiration or termination of this Agreement.

7. Entire Agreement. The Parties acknowledge that they have read this Agreement, understand it, and agree to be bound by its terms and further agree that it is the complete and exclusive statement of the agreement between the Parties relating to its subject matter and that this Agreement supersedes all prior and contemporaneous oral and written understandings, representations and agreements concerning the subject matter hereof and may not be modified except in writing signed by both Parties and specifically referring to this Agreement.

8. Electronic Signatures. The Parties agree that this Agreement shall be subject to the provisions of the Electronic Signatures in Global and National Commerce Act (the "Act"), which makes legally effective a contract in electronic form, accepted by means of an electronic signature. Electronic signatures shall be valid and effective signatures under the Act for purposes of the execution of this Agreement and any modifications, extensions or renewals thereof.



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

**ACCEPTED AND AGREED:**

**LICENSEE:**
**Swedish Treasures, LLC**

Signed: Justin Davies
Justin Davies

By: ______________________
COO

Title: ______________________
06 / 03 / 2025

Date: ______________________

**LICENSOR:**
**Fish Kiss, Inc.**

Signed: Anne Klein

By: Anne Klein

Title: President

Date: 5/9/25





Doc ID: 23994ae751b3abcade83da440310409cffe537cb

**Exhibit A: Licensed Artwork**

Artwork for 50 state maps





Doc ID: 23994ae751b3abcade83da440310409cffe537cb




ALABAMA SQUARE CANVAS ART
from $ 32.00




ALASKA SQUARE CANVAS ART
from $ 32.00




AMERICA SQUARE CANVAS ART
from $ 32.00




ARIZONA SQUARE CANVAS ART
from $ 32.00




ARKANSAS SQUARE CANVAS ART
from $ 32.00




CALIFORNIA SQUARE CANVAS ART
from $ 32.00




COLORADO SQUARE CANVAS ART
from $ 32.00




CONNECTICUT SQUARE CANVAS ART
from $ 32.00



DELAWARE SQUARE CANVAS ART
from $ 32.00




FLORIDA SQUARE CANVAS ART
from $ 32.00



GEORGIA SQUARE CANVAS ART
from $ 32.00




HAWAII SQUARE CANVAS ART
from $ 32.00




IDAHO SQUARE CANVAS ART
from $ 32.00




ILLINOIS SQUARE CANVAS ART
from $ 32.00




INDIANA SQUARE CANVAS ART
from $ 32.00




IOWA SQUARE CANVAS ART
from $ 32.00




KANSAS SQUARE CANVAS




KENTUCKY SQUARE CANVAS




LOUISIANA SQUARE CANVAS




MAINE SQUARE CANVAS ART



Doc ID: 23994ae751b3abcade83da440310409cffe537cb




MARYLAND SQUARE CANVAS ART

from $ 32.00




MASSACHUSETTS SQUARE CANVAS ART

from $ 32.00




MICHIGAN SQUARE CANVAS ART

from $ 32.00




MINNESOTA SQUARE CANVAS ART

from $ 32.00




MISSISSIPPI SQUARECANVAS ART




MISSOURI SQUARE CANVAS ART




MONTANA SQUARE CANVAS ART




NEBRASKA SQUARE CANVAS ART




NEVADA SQUARE CANVAS ART
from $ 32.00




NEW HAMPSHIRE SQUARE CANVAS ART
from $ 32.00




NEW JERSEY SQUARE CANVAS ART
from $ 32.00




NEW MEXICO SQUARE CANVAS ART
from $ 32.00




NEW YORK SQUARE CANVAS ART
from $ 32.00




NORTH CAROLINA SQUARE CANVAS ART
from $ 32.00




NORTH DAKOTA SQUARE CANVAS ART
from $ 32.00




OHIO SQUARE CANVAS ART
from $ 32.00




OKLAHOMA SQUARE CANVAS ART
from $ 32.00




OREGON SQUARE CANVAS ART
from $ 32.00




PENNSYLVANIA SQUARE CANVAS ART
from $ 32.00




RHODE ISLAND SQUARE CANVAS ART
from $ 32.00




SOUTH CAROLINA SQUARE CANVAS ART
from $ 32.00




SOUTH DAKOTA SQUARE CANVAS ART
from $ 32.00




TENNESSEE SQUARE CANVAS ART
from $ 32.00




TEXAS SQUARE CANVAS ART
from $ 32.00




UTAH SQUARE CANVAS ART




VERMONT SQUARE CANVAS ART




VIRGINIA SQUARE CANVAS ART




WASHINGTON D.C. SQUARE CANVAS ART



Doc ID: 23994ae751b3abcade83da440310409cffe537cb



WASHINGTON SQUARE



WEST VIRGINIA SQUARE



WISCONSIN SQUARE



WYOMING SQUARE CANVAS



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

**Exhibit B: Products - Exclusive**

Tea towels
Glass drinkware
Ceramic mugs
Plastic platters
Swedish dishcloths



Doc ID: 23994ae751b3abcade83da440310409cffe537cb

Dropbox Sign

Audit trail

| | |
|---|---|
| **Title** | Wet It Collab License Agmt 5.9.25 |
| **File name** | Wet It Collab License Agmt 5.9.25.pdf |
| **Document ID** | 23994ae751b3abcade83da440310409cffe537cb |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| SENT | **06 / 03 / 2025** 15:07:26 UTC | Sent for signature to Justin Davies (justin@myswedishtreasure.com) from anne@fish-kiss.com IP: 2607:fb90:6d94:c766:295b:7670:8f01:e69b |
| EMAIL CHANGED | **06 / 03 / 2025** 15:14:30 UTC | justin@myswedishtreasure.com was changed to justin@myswedishtreasures.com after requester reassignment. IP: 172.59.228.145 |
| VIEWED | **06 / 03 / 2025** 15:36:10 UTC | Viewed by Justin Davies (justin@myswedishtreasures.com) IP: 199.59.75.87 |
| SIGNED | **06 / 03 / 2025** 15:36:30 UTC | Signed by Justin Davies (justin@myswedishtreasures.com) IP: 199.59.75.87 |
| COMPLETED | **06 / 03 / 2025** 15:36:30 UTC | The document has been completed. |

Powered by Dropbox Sign