**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL ACTION NO. 1:26-cv-00243-MOC-WCM**

| | | |
|---|---|---|
| FISH KISS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SWEDISH TREASURES, LLC d/b/a WET-IT!; CHARLES JUSTIN DAVIES; LOUISE MATHILDA DAVIES; JOANNA PHILIPPA KIDD; ZENTRA LLC; and DOES 1–3,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **BRIEF IN SUPPORT OF DEFENDANT SWEDISH TREASURES, LLC d/b/a WET-IT!'S PARTIAL MOTION TO DISMISS (Fed. R. Civ. P. 12(b)(6))** |

Defendant Swedish Treasures, LLC d/b/a Wet-It! ("Wet-It") submits this Brief pursuant to LCvR 7.1(c) in support of its Partial Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

This case arises from the end of a commercial license. For three years, Wet-It licensed Plaintiff Fish Kiss, Inc.'s state-map artwork under two written License and Collaboration Agreements. When the last Agreement expired on January 1, 2026, Wet-It launched its own line of state-map artwork. Fish Kiss responded with an eleven-count, 228-paragraph Complaint that seeks to convert every aspect of the parties' former business relationship into federal and state claims. Wet-It will answer and defend the copyright, trademark, contract, and remaining claims on their merits. But the copyright counts, and four other counts, fail as a matter of law on the face of the Complaint and the exhibits Plaintiff attached to it:

- Counts I and III (copyright) fail because Plaintiff's own exhibits show that the registrations name only an undefined "Fish Kiss" as author and claimant, Plaintiff alleges that Anne Klein authored the works, and the only written transfer Plaintiff can

point to is a "confirmatory" assignment executed nine days before suit by a company dissolved more than five years earlier;

- Count IV (reverse passing off) seeks Lanham Act protection for Plaintiff's product "specifications" and "supply chain," which *Dastar* forecloses;
- Count VII (breach of fiduciary duty) attempts to turn an arm's-length license — which the parties expressly agreed was *not* a partnership, joint venture, or agency — into a fiduciary relationship;
- Count X (tortious interference) identifies no contract that any third party breached and no specific prospective contract that was lost;
- Count XI (conversion) seeks to recover for intangible art files, which cannot be converted and are the subject matter of copyright, and for blank towels that the Complaint concedes Wet-It paid for; and
- Counts I and III also rely in part on maps of four states for which Plaintiff admits it holds no copyright registration.

**STATEMENT OF THE CASE AND ALLEGED FACTS**

For purposes of this Motion only, the well-pleaded factual allegations of the Complaint are taken as true. Fish Kiss, a Colorado corporation, sells home décor products bearing illustrated maps of U.S. states (the "Fish Kiss Artwork"). Compl. ¶¶ 1, 9, 19. Wet-It, a North Carolina limited liability company, makes Swedish dishcloths and related products. *Id.* ¶¶ 10, 24. Justin Davies and Mathilda Davies are Wet-It's Chief Operating Officer and Chief Executive Officer, respectively. *Id.* ¶¶ 11–12. Ms. Kidd is an artist who does business as "Pippa" *Id.* ¶ 13.

Fish Kiss and Wet-It — and only those two entities — entered into the 2023 Agreement and the 2025 Agreement, under which Fish Kiss licensed its artwork to Wet-It for specified

products and delegated to Wet-It day-to-day operation of the Fish Kiss product line. *Id.* ¶¶ 27–44; ECF No. 1-3 (Ex. B); ECF No. 1-4 (Ex. C). Justin Davies signed each Agreement solely on behalf of the company as its "COO." ECF No. 1-4 at 16. Neither Mathilda Davies nor Ms. Kidd signed either Agreement. Each Agreement provides that "[t]he relationship between Parties created hereby is that of licensee and licensor, and not that of partners, joint venturers, principal and agent, employer and employee or any similar relationship, the existence of which the Parties hereby expressly deny," and that the licensee "shall, with respect to Licensor, be an independent entity." ECF No. 1-4 at 14, § XVIII.2; ECF No. 1-3 § XVIII.2. Fish Kiss retained approval rights over samples, mockups, labels, packaging, and advertising, ECF No. 1-4 at 5–6, §§ III.B–D, pricing and channels, *id.* at 10, § X.C, and use of its trademark, *id.* at 11–12, § XII, and reserved all rights not expressly granted, *id.* at 3, § I.C.

The 2025 Agreement expired on January 1, 2026. Compl. ¶ 75. Wet-It thereafter offered its own collection of state-map artwork created by Ms. Kidd (the "Pippa Artwork"), which Fish Kiss contends is substantially similar to or derivative of the Fish Kiss Artwork. *Id.* ¶¶ 79–87. Fish Kiss also alleges post-termination contract breaches regarding royalties, inventory, customer lists, and vendors, and alleges that Wet-It printed its own artwork on blank tea towels for which Wet-It "had paid." *Id.* ¶¶ 103–170. Fish Kiss concedes that it holds no copyright registration for its Alaska, North Dakota, South Dakota, or Rhode Island maps, yet its comparison exhibit includes each of those states. *Id.* ¶ 21; ECF No. 1-6 at 3, 35, 40, 42 (Ex. E) .

The Complaint asserts eleven counts. Several are asserted against "All Defendants" or against the individual Defendants without identifying any act by the individual in question. *See, e.g.*, Compl. ¶¶ 17–18, 213–216, 221–224.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court accepts well-pleaded factual allegations as true, it does not accept legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A claim is plausible only when the pleaded facts allow the Court to draw the reasonable inference that the particular defendant is liable for the misconduct alleged. *Id.*

In ruling on a Rule 12(b)(6) motion, the Court may consider documents attached to the complaint as exhibits, and where the allegations of the complaint conflict with an attached exhibit, the exhibit generally prevails. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166–68 (4th Cir. 2016); *see also* Fed. R. Civ. P. 10(c). Plaintiff attached to the Complaint its copyright and trademark registration certificates and a "Confirmatory Copyright Assignment" (ECF No. 1-2 (Ex. A)), the 2023 License and Collaboration Agreement (ECF No. 1-3, the "2023 Agreement"), the 2025 License and Collaboration Agreement (ECF No. 1-4, the "2025 Agreement" and, together with the 2023 Agreement, the "Agreements"), and side-by-side artwork comparisons (ECF No. 1-6), among other exhibits. Those exhibits are properly before the Court.

## ARGUMENT

### I. Counts I and III Should Be Dismissed Because the Complaint and Its Exhibits Do Not Plausibly Establish That Fish Kiss, Inc. Owns the Asserted Copyrights.

Only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the

owner of it." 17 U.S.C. § 501(b). Copyright "vests initially in the author or authors of the work"; in the case of a work made for hire, the employer is considered the author. 17 U.S.C. § 201(a)–(b). Ownership may be transferred, but "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204(a). Whether a plaintiff is a proper party under § 501(b) is a question of statutory authorization to sue, properly raised under Rule 12(b)(6). *See* 17 U.S.C. § 501(b); *Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014). Where, as here, the plaintiff is not the claimant named in the registration certificates, it must plausibly allege a chain of title from the person who owned the copyright to itself. The Complaint and the exhibits Plaintiff chose to attach do not do so.

### A. The Registrations Do Not Name Plaintiff, and the Only Link Between "Fish Kiss" and Fish Kiss, LLC Is a Recital Written in 2026.

Plaintiff is Fish Kiss, Inc., a Colorado corporation formed on March 8, 2019. ECF No. 1-2 at 52. None of the registration certificates name Fish Kiss, Inc. Each identifies the author and the copyright claimant only as "Fish Kiss" — not Fish Kiss, LLC and not any other legal entity — designates the work as a "work made for hire," and then lists the "author's" citizenship, domicile, and a "Year Born" of 1981, attributes of a natural person rather than a company. *See, e.g.*, ECF No. 1-2 at 50 (Hawaii Map). The Complaint, for its part, alleges that "Klein authored the Fish Kiss Artwork." Compl. ¶ 173; *see also id.* ¶¶ 1, 20. Nothing in the certificates identifies "Fish Kiss" as Fish Kiss, LLC. The only document that does so is the "Confirmatory Copyright Assignment" executed on August 12, 2026, which declares that "[a]s used in the registrations, 'Fish Kiss' refers to Assignor." ECF No. 1-2 at 52. A recital drafted more than nine years after the registrations, and nine days before suit, is not a fact the Court must accept, and it is

contradicted by the certificates' own data and by Plaintiff's allegation that Ms. Klein is the author. *See Goines*, 822 F.3d at 166–68.

If, as the Complaint alleges, Ms. Klein authored the works, the copyrights vested in her unless the works were made for hire by an employee within the scope of employment. 17 U.S.C. §§ 101, 201(a)–(b); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 750–52 (1989). The Complaint alleges no facts showing that Ms. Klein was an employee of Fish Kiss, LLC, and it alleges that she began the business in 2014 — the same year the Assignment says the LLC was formed. Compl. ¶ 20; ECF No. 1-2 at 52. And no writing from Ms. Klein transferring any copyright to Fish Kiss, LLC or to Plaintiff is alleged or attached. A conveyance from Fish Kiss, LLC conveys nothing if Fish Kiss, LLC never owned the works. The Complaint therefore fails to plausibly allege that Plaintiff is the legal or beneficial owner of the asserted copyrights.

**B. The 2026 "Confirmatory" Assignment Cannot Supply the Missing Chain of Title.**

The Complaint alleges that Plaintiff acquired the copyrights "by written assignment from Fish Kiss, LLC, effective April 1, 2021." Compl. ¶ 21; *see also id.* ¶ 173 ("via written transfer"). The exhibit Plaintiff attached shows otherwise. No 2021 writing exists in the record. The only instrument is the Confirmatory Copyright Assignment, executed on August 12, 2026 by Anne Klein on *both* sides — as "Member" of Fish Kiss, LLC and as "Owner" of Fish Kiss, Inc. ECF No. 1-2 at 52–54. It recites that Fish Kiss, LLC "transferred its operating assets, including its copyright assets, to Assignee effective April 1, 2021," that Fish Kiss, LLC "was dissolved effective July 2, 2021," and that the 2026 instrument is "executed as an act appropriate and necessary to complete the winding up of Assignor's affairs." *Id.* at 52. It then purports, "[t]o the extent any Assigned Right did not effectively transfer to Assignee on the Original Transfer Date," to assign those rights "as of the Execution Date," while disclaiming any "admission that

the Original Transfer was ineffective." *Id.* at 53, ¶¶ 2, 8. Where an exhibit contradicts the allegations of the complaint, the exhibit controls. *Goines*, 822 F.3d at 166–68.

The Assignment cannot bear the weight Plaintiff places on it, for three independent reasons.

*First*, it is internally self-defeating. If, as it recites, Fish Kiss, LLC transferred all of its copyright assets to Plaintiff in April 2021, then Fish Kiss, LLC had nothing left to assign in 2026, and the document is not itself a transfer but an after-the-fact assertion that an unwritten transfer occurred five years earlier — which § 204(a) does not permit to substitute for a signed writing of the transfer. 17 U.S.C. § 204(a). If, on the other hand, the 2021 transfer did not occur, then the present assignment depends entirely on the dissolved LLC's authority to convey property in 2026, which fails for the reasons below.

*Second*, a dissolved Colorado limited liability company continues its existence only to wind up its affairs and liquidate its business and the person winding up may preserve the business "for a reasonable time" and "dispose of and transfer the limited liability company's property" for that purpose. C.R.S. § 7-80-803.3. A conveyance executed **five years, one month, and ten days** after dissolution — after Plaintiff, as purported owner, had already entered into two multi-year license agreements for the same works, and for the evident purpose of filing this lawsuit nine days later — is not a reasonable-time winding-up act. ECF Nos. 1-3 at 1-4. It is a litigation document. The Complaint pleads no facts showing that Fish Kiss, LLC's winding up remained open in 2026, that Ms. Klein was authorized to act for the dissolved company, or that any of its property remained undistributed.

*Third*, Plaintiff's own conduct confirms the absence of any written transfer during the period relevant to this case. Plaintiff represented in the 2023 and 2025 Agreements that it was

"the creator and owner" of the artwork and that "[a]ll copyrights in and to the Licensed Artwork are owned by Licensor." ECF No. 1-3 at 2 & § XI.A; ECF No. 1-4 at 2, 10 (§ XI.A). Yet Plaintiff did not exist when the works were created, and the only writing it has ever produced is dated August 12, 2026. The alleged infringement began, according to the Complaint, in January 2026 — before Plaintiff held any written instrument at all. Compl. ¶¶ 76, 79.

Plaintiff will likely respond that some courts permit a later writing to confirm an earlier oral transfer and decline to let an alleged infringer invoke § 204(a) where the transferor and transferee agree that a transfer occurred. 17 U.S.C. § 204(a); *see, e.g.*, *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982); *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995). Those decisions do not save the Complaint. They presuppose that the transferor actually owned what it confirmed transferring. Here, Plaintiff's own allegations and exhibits indicate that the works were authored by Ms. Klein and registered in the name of an undefined "Fish Kiss," and the confirmatory instrument comes only from an LLC that — on this record — never held title, was dissolved five years earlier, and had, by its own recital, already disposed of its copyright assets. A confirmation from a party that did not own the rights cannot establish Plaintiff's ownership.

Because the Complaint does not plausibly allege that Plaintiff was the legal or beneficial owner of the asserted copyrights when the alleged infringement occurred, Counts I and III should be dismissed as against Wet-It.

## II. Count IV Fails Because the Lanham Act Does Not Protect Plaintiff's Product Specifications or Supply Chain.

Count IV alleges that Wet-It "obtained blank tea towels manufactured using Fish Kiss's proprietary sourcing specifications and supply chain," printed its own artwork on them, and sold them under its own name, thereby "misrepresenting itself as the source." Compl. ¶¶ 199–200.

That theory is foreclosed by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). In *Dastar*, the Supreme Court held that the phrase "origin of goods" in Section 43(a) of the Lanham Act refers to the producer of the tangible goods offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. *Id*. A false-designation or reverse-passing-off claim therefore cannot be based on the contention that the defendant failed to credit the plaintiff for the ideas, designs, or specifications from which the defendant's goods were made.

That is exactly what Count IV attempts. The Complaint does not allege that Fish Kiss manufactured, owned, or sold the blank towels; it alleges that Wet-It paid for them and that they were made using Fish Kiss's "specifications" and "supply chain." Compl. ¶¶ 155–156, 199–200. Wet-It — which acquired the blank goods, printed its own artwork on them, and sold them — is the "producer of the tangible goods" within the meaning of *Dastar*, and its identification of itself as the source of those goods is accurate. *Dastar*, 539 U.S. at 37. Indeed, the Complaint faults Wet-It for removing the FISH KISS label from the towels, Compl. ¶ 156, but after January 1, 2026 the 2025 Agreement *prohibited* Wet-It from using the FISH KISS mark. ECF No. 1-4 at 7, 10–12, §§ V.C, XI.B, XII. Plaintiff cannot state a Lanham Act claim against Wet-It for declining to place Plaintiff's trademark on goods Plaintiff did not make. Count IV should be dismissed with prejudice.

## III. Count VII Fails Because an Arm's-Length Licensor–Licensee Relationship Does Not Give Rise to Fiduciary Duties.

Under North Carolina law, a fiduciary relationship arises where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence. *Dalton v. Camp*, 353 N.C. 647, 651–52 (2001). Parties to an arm's-length commercial contract generally do not owe each other

fiduciary duties, even where one depends on the other's performance. *See id.*; *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347–48 (4th Cir. 1998) (applying North Carolina law; franchise relationship did not give rise to fiduciary duties). And a party's failure to perform its contract does not give rise to a tort claim absent an independent duty. *Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65 (1992).

The Agreements on which Count VII rests foreclose the claim. The parties expressly agreed that their relationship "is that of licensee and licensor, and not that of partners, joint venturers, principal and agent, … or any similar relationship, the existence of which the Parties hereby expressly deny," and that the licensee is "an independent entity." ECF No. 1-4 at 14, § XVIII.2. Fish Kiss did not surrender control to Wet-It; it retained written-approval rights over products, samples, mockups, labels, and advertising, *id.* at 5–6, §§ III.B–D, controlled discounting and sales channels, *id.* at 10, § X.C, barred any sublicensing, *id.* at 3, § I.C, and reserved all rights not expressly granted. *Id*. Those are the hallmarks of an arm's-length license, not of a relationship in which one party holds all the power.

Plaintiff relies on its allegation that it gave Wet-It "the keys to the castle" and on Paragraph XII.E of the Agreements. Compl. ¶¶ 30, 210. But a licensee's undertaking to perform operational services for the licensor is a contractual obligation, and the remedy for its alleged breach is the breach-of-contract claim Plaintiff has already pleaded (Count VI). Section XII.E, moreover, addresses only trademark quality control, stating that the licensor "may reasonably rely on Licensee's compliance with Licensor's quality standards." ECF No. 1-4 at 12, § XII.E. A clause permitting reliance on contractual quality standards does not convert the parties' expressly non-fiduciary relationship into a fiduciary one. Every breach alleged in Count VII — use of artwork, customer and vendor information, the Swig opportunity, discounting, and retention of

customer lists — duplicates an alleged breach of an express contractual term in Count VI. Compl. ¶ ¶ 207, 211. Count VII should be dismissed.

## IV. Count X Fails to State a Claim for Tortious Interference.

Tortious interference with contract requires (1) a valid contract between the plaintiff and a third person conferring a contractual right on the plaintiff; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third person not to perform the contract; (4) without justification; (5) resulting in actual damage. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988). Tortious interference with prospective economic advantage requires that the defendant, without justification, induced a third party to refrain from entering into a contract with the plaintiff that would have ensued but for the interference. *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701 (2016). Interference is justified where the defendant acts for a legitimate business purpose, including competition. *See Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 220–21 (1988).

Count X satisfies none of these requirements. The only contract it identifies is Fish Kiss's license with Swig, but the Complaint does not allege that Swig breached, terminated, or failed to perform that license; to the contrary, it alleges that Swig remains Fish Kiss's "current licensee." Compl. ¶¶ 97, 222. The remaining references to "established relationships with wholesale customers, vendors, and prospective licensees" do not identify any specific contract that would have been formed but for the alleged interference, as *Beverage Systems* requires. *Id.* ¶ 222; *Beverage Sys.*, 368 N.C. at 701. The allegation that a retailer told Swig it would not need to purchase product "for the foreseeable future" describes a third party's purchasing decision, not the loss of an identified contract; and it is attributed to Wet-It's sale of *licensed* Fish Kiss inventory during the license term — conduct the Agreements authorized and that is justified as a

matter of law. Compl. ¶ 223(a). Alleged keyword use, email blasts, and listings are competitive marketing directed at the public, not inducement of any third party to breach a contract with Fish Kiss. *Id.* ¶ 223(b)–(c). Contacting Swig's chief executive to request its customer list is not alleged to have caused Swig to do or refrain from doing anything. *Id.* ¶ 223(d). And the unspecified "disparaging statements" in Paragraph 223(e) are entirely conclusory. *Id.* ¶ 223(e).

Count X should be dismissed.

## V. Count XI Fails Because Intangible Art Files Cannot Be Converted, Any Such Claim Is Preempted, and Plaintiff Alleges No Ownership of the Blank Towels.

Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the exclusion of the owner's rights. *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956). North Carolina does not recognize conversion of intangible interests. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414 (2000). Count XI rests on two theories, and both fail.

*First*, Plaintiff alleges that Wet-It converted its "digital art files" by retaining them after termination and using them as a reference. Compl. ¶¶ 226–227. Digital files embodying artwork are intangible, and Plaintiff does not allege that it was deprived of its own copies of them. More fundamentally, a claim that a defendant wrongfully retained and copied artwork, or used it to create competing works, is equivalent to a claim for infringement of the exclusive rights protected by Section 106 of the Copyright Act and is therefore preempted. 17 U.S.C. § 301(a); *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) (conversion claim based on intangible intellectual property preempted); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229–30 (4th Cir. 1993) (state claim preempted unless it requires an extra element that makes it qualitatively different from copyright infringement).

*Second*, Plaintiff alleges a "property interest" in blank tea towels "manufactured using its proprietary specifications and supply chain." Compl. ¶ 226. But the Complaint affirmatively alleges that Wet-It took the position that "the towels belonged to Wet-It because [it] had paid for them" and nowhere alleges that Fish Kiss paid for, owned, possessed, or had a right to possess them. *Id.* ¶ 155. The 2025 Agreement gave Fish Kiss only an *option* to purchase remaining inventory of *Licensed Products* — finished goods bearing the licensed artwork — at the lowest wholesale price and the Complaint alleges that Fish Kiss declined to purchase inventory. ECF No. 1-4 at 7, § V.C; Compl. ¶¶ 66, 116, 125. An interest in the specifications from which goods are made is not ownership of the goods. Count XI should be dismissed.

## VI. Counts I and III Should Be Dismissed to the Extent They Are Based on Unregistered Works.

"[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Registration occurs when the Copyright Office registers the copyright, not when an application is filed. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 309 (2019).

Plaintiff concedes that its registrations do not cover its maps of Alaska, North Dakota, South Dakota, or Rhode Island. Compl. ¶ 21. Yet Plaintiff's comparison exhibit — on which its claims of substantial similarity rest — includes each of those states. *Id.* ¶ 82; ECF No. 1-6 at 3 (Alaska), 35 (North Dakota), 40 (Rhode Island), 42 (South Dakota). To the extent Counts I and III seek relief based on any alleged copying of those unregistered works, or of any other work not covered by a registration identified in Exhibit A to the Complaint, they must be dismissed as against Wet-It.

## CONCLUSION

For the foregoing reasons, Wet-It respectfully requests that the Court grant its Partial Motion to Dismiss and dismiss Counts I and III (standing); Count IV; Count VII; Count X; Count XI; Counts I and III, in part of the Complaint as against Wet-It, as set forth in the Motion. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Wet-It will serve an Answer to the Complaint within fourteen days after notice of the Court's ruling.

This the 26th day of October, 2026.

s/ Ray Ashburg
Ray Ashburg
N.C. State Bar No. 31371
Attorney for Defendant Swedish Treasures, LLC d/b/a Wet-It!
AVONTIS | Attorneys & Counselors at Law
112 S. Tryon Street, Suite 809
Charlotte, North Carolina 28284
Telephone: (704) 408-2530
Facsimile: (704) 280-1245
Ashburg@AvontisLaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Scottie Forbes Lee
ELLIS & WINTERS LLP
Post Office Box 2752
Greensboro, North Carolina 27402
scottie.lee@elliswinters.com
Attorney for Plaintiff Fish Kiss, Inc.

Jeffrey S. Southerland
Daniel D. Stratton
Claire E. Grantham
TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, North Carolina 27402
jsoutherland@tuggleduggins.com
dstratton@tuggleduggins.com
cgrantham@tuggleduggins.com
Attorneys for Defendant Zentra LLC

This the 26th day of October, 2026.

s/ Ray Ashburg
Ray Ashburg
N.C. State Bar No. 31371
Attorney for Defendant Swedish Treasures, LLC d/b/a Wet-It!
AVONTIS | Attorneys & Counselors at Law
112 S. Tryon Street, Suite 809
Charlotte, North Carolina 28284
Telephone: (704) 408-2530
Facsimile: (704) 280-1245
Ashburg@AvontisLaw.com